EDWARD M. SMITH, petitioner.

Suffolk.    March 22, 1892. — May 10, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Trust Deed — Heirs of surviving Daughter — Tenant by the Curtesy.*

Trust property was to be divided to the heirs of a surviving daughter of the creators of the trust, "in such shares and in the same manner as they would have held the same by the laws of Massachusetts if the said surviving daughter had died seised thereof in fee simple." *Held*, that the surviving daughter had no power of disposition over the property by will, but that her husband, on her death leaving no issue, was a statutory heir to an estate not exceeding five thousand dollars in value.

BILL IN EQUITY, filed on April 25, 1891, by the trustee under the trust deed of Melancthon and Lucy Ann Smith, for instruc-

tions as to the disposition of a trust fund and accumulated income. The case was heard by *Holmes*, J., who reserved it for the consideration of the full court, in substance as follows.

Melancthon and Lucy Ann Smith, his wife, executed a trust deed of two parcels of land, on December 15, 1852, then having three children, Edward Melancthon Smith, the petitioner in this case, Caroline Sumner Smith, who died on July 24, 1862, unmarried, and Mary Ashton Smith, who died on November 28, 1890, having married Samuel T. Holmes on January 13, 1869, and having had one child by him, who died on September 4, 1890, and who never married. Samuel T. Holmes at the date of these proceedings, was insane, and William B. Durant was his guardian, duly appointed by the Probate Court. Melancthon and Lucy Ann Smith died on July 10, 1861, and on February 19, 1867, respectively.

The sixth article of the trust deed was as follows: " In case one of said daughters shall have deceased before the death of said Melancthon and Lucy Ann, leaving no issue living at the time of the decease of the survivor of said Melancthon and Lucy, or in case one of them shall decease after the death of said Melancthon and Lucy and shall leave no issue, then in trust to permit the surviving daughter to use and occupy the premises during her natural life, she paying taxes and charges as aforesaid, or, if she shall not choose so to occupy, then in trust to let the same as aforesaid and to pay over the net rent and income thereof upon her sole and separate receipt, and to her sole and separate use as aforesaid during her natural life, and upon the death of said surviving daughter then in trust to convey the premises in fee simple to the heirs at law of said surviving daughter, in such shares and in the same manner as they would have held the same by the laws of Massachusetts if the said surviving daughter had died seised thereof in fee simple."

The ninth article was as follows: " Upon the further trust, after the decease of said Melancthon, in case the income of said premises shall in the opinion of said trustees be insufficient and inadequate in proportion to the value of the premises, then at the discretion of said trustees, and with the consent in writing of said Lucy Ann if she shall be living, and after her death with the written consent of said daughters or of the survivor of them,

to sell and convey the premises, or any portion thereof, to such persons, and on such terms and for such consideration, as said trustees shall see fit, and the proceeds thereof to invest in such stocks, funds, or securities as they shall deem safe, profitable, and expedient, with full power to exchange and reinvest the same for and in other like stocks, funds, and securities, and to hold the remainder of said premises and said stocks, funds, and securities upon the same trusts, and to apply the income thereof, and in case of the death of said daughters, or either of them, to divide the same, and in the same manner and among the same persons as is hereinbefore provided respecting said premises and the rents and income thereof."

The trustee, pursuant to the ninth article, sold the land which constituted the trust, and invested the proceeds in stocks and other personal securities. The prayer was for instructions as to whether the trust fund and the accumulated income thereof should be paid to Edward M. Smith or to Samuel T. Holmes.

*R. M. Morse & M. Morton*, for Edward M. Smith.

*W. B. Durant*, for Samuel T. Holmes.

FIELD, C. J. The beneficiaries named in the trust deed are all dead. Melancthon Smith died on July 10, 1861; Lucy Ann Smith died on February 19, 1867; Caroline Sumner Smith died on July 24, 1862, having never married; Mary Ashton Smith died on November 28, 1890, having married Samuel T. Holmes, January 13, 1869, and having had one child by him, who died September 4, 1890, and who never married. Samuel T. Holmes was living until December 24, 1891, being insane and under guardianship, and on his death the administrators of his estate appeared in this suit. His wife, Mary Ashton Smith, left a will, in which she gave to him nearly all her property, including all trust property over which she had a power of disposition. The petitioner is the only surviving child of Melancthon and Lucy Ann Smith. The trustees, pursuant to the ninth article of the trust deed, have sold the parcels of land which constituted the trust property, and have invested the proceeds in stocks and other personal securities; but by the terms of the trust these are to be divided, in the event that has happened, "in the same manner and among the same persons as is hereinbefore provided respecting said premises and the rents and income thereof."

The provision before made in the trust deed is found in the sixth article, and is that the trustees, on the death of the surviving daughter, the father and mother having died, shall " convey the premises in fee simple to the heirs at law of said surviving daughter, in such shares and in the same manner as they would have held the same by the laws of Massachusetts if the said surviving daughter had died seised thereof in fee simple."

There can be no doubt that Mary Ashton Smith, who was the surviving daughter, had no power of disposition over this property by will, and that the stocks and personal securities should be distributed as the real estate would have been conveyed if it had not been sold, and that the laws of Massachusetts in force when Mary Ashton Smith died are to govern the distribution.  By those laws, on November 28, 1890, if Mary Ashton Smith had died seised of the real estate in fee simple, her husband would have taken an estate in fee, to an amount not exceeding five thousand dollars in value, and he would also, as tenant by the curtesy, have taken an estate for his life in the rest of the real estate. Pub. Sts. c. 124, § 1.   St. 1887, c. 290, § 1.   As she left no issue, and no father or mother, and no issue of any deceased brother or sister, her real estate generally would have descended to her brother, the petitioner.   Pub. Sts. c. 125, § 1, cl. 5.

The language of the trust deed in this case brings it, we think, within several recent decisions.   As tenant by the curtesy, the husband is not an heir at law, but he is a statutory heir to an estate not exceeding five thousand dollars in value.   *Lavery* v. *Egan*, 143 Mass. 389.   *Lincoln* v. *Perry*, 149 Mass. 368, 373. *Proctor* v. *Clark*, 154 Mass. 45.   The petitioner is the heir of the residue.   Five thousand dollars should be paid to the administrators of the estate of Samuel T. Holmes, and the residue to the petitioner.

*So ordered.*